ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| HARRY AUTO KOOL, INC.<br><br>Apelante<br><br>v.<br><br>ALEJANDRO MATTA RODRÍGUEZ t/c/c ALEX MATTA RODRÍGUEZ y su esposa MARÍA DEL CARMEN MÉNDEZ CABÁN t/c/c MARÍA MÉNDEZ MATTA la Sociedad de Legal de Bienes Gananciales compuesta por ambos y FB PROPERTIES, INC., FIRST BANK DE PUERTO RICO y RENT EXPRESS BY BERRÍOS, INC.<br><br>Apelados | KLAN202300969 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: NSCI200500354<br><br>Sobre: Incumplimiento de Contrato y Contrato en Daños a Terceros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 13 de diciembre de 2023.

Este *Recurso de Apelación* fue presentado por Harry Auto Kool, Inc. (en adelante, HAK o parte Apelante) el 30 de octubre de 2023. La parte apelada consiste en Alejandro Matta Rodríguez y su esposa María del Carmen Méndez Cabán, la sociedad legal de bienes gananciales compuesta por ambos (en adelante matrimonio Matta-Méndez o co apelados), FB Properties, Inc., First Bank de Puerto Rico y Rent Express By Berrios, Inc. Los apelantes Nos solicitan que revoquemos la *Sentencia Sumaria Parcial Nunc Pro Tunc* dictada el 25 de septiembre de 2023 y notificada el 29 de septiembre de 2023, por el Tribunal de Primera

Instancia, Sala Superior de Fajardo (en adelante, TPI). Dicha *Sentencia Sumaria Parcial Nunc Pro Tunc*, enmendó la sentencia dictada el 5 de septiembre de 2023. Mediante dictamen contra el que aquí se recurre, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por First Bank y resuelve que el contrato de opción de compra celebrado entre los apelados matrimonio Matta-Méndez y HAK no reúne los elementos esenciales para su validez, al carecer de un objeto lícito y lo declara *nulo ab initio* y sin eficacia legal alguna. Ante ello desestimó todas las causas de acción basadas en el contrato entre el matrimonio Matta-Méndez y HAK. En el caso ante el TPI se mantuvo la reconvención y otros reclamos de los allí demandados.

Por los fundamentos que expondremos, se revoca la *Sentencia Sumaria Parcial Nunc Pro Tunc* apelada.

## I.

El 18 de diciembre de 2000, el matrimonio Matta-Méndez como parte vendedora, y HAK o parte apelante, como parte compradora, suscribieron un Contrato de Opción de Compra a favor de HAK. Mediante dicho acuerdo, el matrimonio Matta-Méndez le concedió a HAK una opción de compraventa de un predio de 500 m.c., a segregarse de una propiedad de 2.728 cuerdas localizada en el Barrio Juan Martín del término municipal de Luquillo, Puerto Rico.

En dicho contrato se estableció la suma de $175,000.00 como el precio de la futura compraventa de la parcela de 500 metros cuadrados objeto del contrato de opción. En la cláusula quinta, el término para ejercer la opción se expresó en dicho contrato de opción, hasta que ARPE aprobara la segregación de la parcela de 500 metros cuadrados.

El precio de la futura compraventa se pagaría $100,000.00 pagaderos con anterioridad al acto de la firma del contrato de opción y $75,000.00 pagaderos al momento de otorgar la correspondiente escritura de compraventa, luego de la aprobación de ARPE.

En la cláusula octava del contrato las partes estipularon "…que, si la Parte Compradora decide no ejercer la presente opción, perderá la suma de $100,000.00 entregados como opción, pero si la Parte Vendedora decide no vender la propiedad objeto del presente otorgamiento o si la Administración de Reglamentos y Permisos no aprueba la correspondiente segregación, entonces regresará a la Parte Compradora la suma de $100.000.00 pagada como opción más una suma adicional de $25,000.00."

El TPI, luego de varias Mociones solicitando Sentencia Sumaria por todas las partes, emite Sentencia Sumaria Parcial Nunc Pro Tunc el 25 de septiembre de 2023 y notificada a las partes el 29 de septiembre de 2023. Dicha Sentencia enmendaba la Sentencia emitida por el TPI el 5 de septiembre de 2023.

En dicha Sentencia el TPI hace las siguientes determinaciones de hechos:

**DETERMINACIONES DE HECHOS QUE DETERMINÓ EL TPI QUE NO ESTABAN EN CONTROVERSIA**

1. Harry Auto Kool, Inc. (HAK) es una corporación privada con fines de lucro, organizada bajo las leyes del Estado Asociado de Puerto Rico, con número de registro corporativo 117790, cuyo certificado de incorporación se presentó el 12 de diciembre de 2000 y cuya vigencia corporativa inició el 2 de enero de 2001. Su presidente y agente residente es el Sr. Harry Meléndez Pacheco, mayor

de edad, casado, comerciante y vecino de Luquillo, Puerto Rico.[1]

2. El Sr. Alejandrino Matta Rodríguez, también conocido por Alex Matta Rodríguez, a la fecha de los hechos alegados y de la radicación de esta demanda, estaba casado bajo el régimen de sociedad legal de bienes gananciales con la Sra. María del Carmen Méndez Cabán, también conocida por María Méndez Matta, ambos mayores de edad y con dirección residencial en Kissimmee, Florida, de los Estados Unidos de América.[2]

3. FB Properties, Inc. (FB), es una corporación doméstica con fines de lucro, organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y con número de registro corporativo 105195. Su presidente y agente residente es el Sr. Bryan Lester Shames Kopel y su vicepresidente, el Sr. Fernando Paonesa López.[3]

4. Hasta la fecha del 27 de diciembre de 2004, los Matta-Méndez eran los dueños de la finca principal que se describe a continuación:

> ---RÚSTICA: Parcela de terreno radicada en el Barrio Juan Martín, del término municipal de Luquillo, Puerto Rico, con cabida de 2.728 cuerdas, equivalentes a 10,722.878 metros cuadrados, según rectificación de cabida hecha mediante la Escritura Número 15 de 12 de mayo de 2004, otorgada ante el Notario, Lcdo. Rogelio Canales, la cual está pendiente de inscripción, asiento 148 del Diario 268 de Fajardo, Puerto Rico. En lindes por el Norte, con la carretera estatal número 940; por el Sur, con la finca principal de la cual se segregó; por el Este, con la carretera estatal número 3 y con faja de terreno rotulada C de 0.983 cuerdas, equivalentes a 3,869.11 metros cuadrados, reservada

---

[1] Véanse estipulaciones de hechos contenidas en: Informe Preliminar de Conferencia con Antelación a Juicio, (IPCAJ), radicado el 14 de noviembre de 2007; Moción Conjunta de Hechos Incontrovertidos, radicada el 20 de mayo de 2008; Resolución del 18 de junio de 2013, archivada en autos el 20 de junio del 2013.

[2] IPCAJ, supra.

[3] IPCAJ, supra.

para uso público; y por el Oeste, con la carretera número 940 y faja de terreno rotulada D de 0.535 cuerdas, equivalentes a 2,106.235 metros cuadrados, reservada para uso público.

---Inscrita al folio Veintiocho (28), vuelto del tomo Ochenta y Ocho (88) de Luquillo, finca número Cuatro Mil Seiscientos Noventa y Uno (4,691), en el Registro de la Propiedad de Puerto Rico, Sección de Fajardo.[4]

5. El 15 de diciembre de 2000, los Matta-Méndez otorgaron un Contrato de Opción de Compra a favor de HAK.[5]

6. La cláusula primera del contrato de opción a compra establece que los Matta-Méndez segregarían de la finca principal una parcela de 500 metros cuadrados a favor de HAK.[6]

7. Sobre la parcela antes aludida enclava una estructura perteneciente a HAK y desde la cual dicha operación realizaba sus operaciones con el consentimiento pleno de los Matta-Méndez.[7]

8. En el contrato de opción de compra los Matta-Méndez y HAK estipularon la suma de $175,000.00 como el precio de la futura compraventa de la parcela de 500 metros cuadrados.[8]

9. La cláusula quinta del contrato de opción a compra dispuso como término de la opción hasta que ARPE aprobara la segregación de la parcela de 500 metros cuadrados.[9]

10. Sobre la parcela antes aludida enclava ubicada una estructura perteneciente a HAK según la cláusula once del contrato de opción a compra y desde la cual dicha

---

[4] IPCAJ, supra.
[5] IPCAJ, supra.
[6] IPCAJ, supra.
[7] Véase Sentencia Parcial, dictada el 26 de agosto de 2011, notificada el 31 de agosto de 2011.
[8] IPCAJ, supra.
[9] IPCAJ, supra.

corporación realizaba sus operaciones con el consentimiento pleno de los Matta-Méndez.[10]

11. El 13 de junio de 2002 los Matta-Méndez, por conducto del Ing. Ernesto Vega Rodríguez, Lic. 5647, presentaron la solicitud de segregación en la ARPE para el predio objeto del contrato de opción de compra.[11]

12. El 31 de marzo de 2004 la Oficina de la ARPE-Humacao emitió una Resolución en el caso número: 02LS5-00000-02588, declarándose sin jurisdicción para atender la segregación del predio en controversia.  En la misma Resolución, la ARPE-Humacao informó que el caso podía ser presentado como un Desarrollo Preliminar ante el Centro Expreso de Servicios Técnicos de San Juan (CET) de la misma agencia en San Juan.[12]

13. El Sr. David Pizarro fue el corredor de bienes raíces contratado por los Matta-Méndez.[13]

14. El Sr. David Pizarro le informó y le mostró a FB el Contrato de Opción de Compra otorgado por los Matta-Méndez y HAK durante las negociaciones previas a la finca principal.[14]

15. La cláusula octava del contrato de opción de compra dispone:

> [e]stipulan las partes que si la Parte Compradora decide no ejercerla presente opción, perderá la suma de $100,000 entregados como opción, pero si la Parte Vendedora decide no vender la propiedad objeto del presente otorgamiento o si la Administración de Reglamentos y Permisos no aprueba la correspondiente segregación, entonces regresará a la parte compradora la suma de $100,000 pagada como opción, más una suma adicional de $25,000.[15]

---

[10] IPCAJ, supra.
[11] IPCAJ, supra.
[12] IPCAJ, supra.
[13] IPCAJ, supra.
[14] IPCAJ, supra.
[15] IPCAJ, supra.

16. El 3 de octubre de 2004, los Matta-Méndez, por conducto del Sr. David Pizarro, y FB, por conducto de su vicepresidente, Sr. Femando Paonesa López, suscribieron un Contrato de Opción de Compra por la finca principal.[16]

17. Como parte de dicho contrato de opción de compra, FB le entregó la suma de $60,000 a los Matta-Méndez.[17]

18. El 26 de octubre de 2004, los Matta-Méndez autorizaron al Ing. Iván Robles a someter ante ARPE de San Juan (CET) un plano de segregación de 500 metros cuadrados para cumplir con el Contrato de Opción de HAK.[18]

19. El 19 de noviembre de 2004, por conducto de la entonces representación legal de los Matta-Méndez, la Lcda. Kiomarys Torres Cruz, HAK fue notificado de una solicitud de desalojo del predio que ocupa y que pretendía adquirir bajo el contrato de opción a compra. En la carta, con fecha de 18 de noviembre de 2004, se alegó como razón para la solicitud de desalojo que HAK había expresado a los Matta-Méndez que no tenía interés en adquirir el mencionado predio.[19]

20. El 20 de diciembre de 2004, a nombre y pedido de HAK, el Ing. Iván Robles presentó ante el CET de la ARPE en San Juan, una solicitud de servicios para la segregación del predio de terreno opcionado a HAK. La solicitud fue presentada bajo el número 04DX2-CET00-10738.[20]

21. El 27 de diciembre de 2004, los Matta-Méndez vendieron la finca principal a FB. La transacción se efectuó mediante

---

[16] IPCAJ, supra.
[17] IPCAJ, supra.
[18] Véase Resolución del 18 de junio de 2013, archivada en autos el 20 de junio del 2013.
[19] IPCAJ, supra.
[20] IPCAJ, supra.

la Escritura Pública Número 31, otorgada el 27 de diciembre de 2004, ante el Notario, Lcdo. Rogelio Canales Figueroa.

22. El 12 de enero de 2005, desconociendo de la venta de la finca principal, HAK le envió una carta a la Lcda. Kiomarys Torres, abogada de los Matta-Méndez, negando haber decidido no ejercer la opción de compra.[21]

23. Luego de tomar conocimiento de la compraventa celebrada entre los Matta-Méndez y FB, el 18 de febrero de 2005, HAK, a través de su representación legal, le envió una carta al presidente de FB. Sr. Bryan Lester Shames Kopel, solicitando que le honrara el contrato de opción, a fin de evitar un procedimiento judicial.[22]

24. El 22 de febrero de 2005, HAK, por conducto de su representación legal, recibió una carta de los Matta-Méndez con fecha de 30 de enero de 2005. En la misma, los Matta-Méndez alegaron que el contrato de opción a compra quedó nulo por razones atribuibles solamente a la ARPE y le ofrecieron a HAK reembolsar la cantidad de $125,000.00.[23]

25. El 28 de febrero de 2005, el Departamento de Agricultura del Estado Libre Asociado de Puerto Rico recomendó no objetar el uso propuesto para la segregación de la parcela que habían opcionado los Matta-Méndez a HAK.[24]

26. El 12 de julio de 2005, la ARPE-San Juan solicitó al Ing. Iván Robles Ramos documentos adicionales para continuar con la evaluación de la solicitud de segregación

---

[21] IPCAJ, supra.
[22] IPCAJ, supra.
[23] IPCAJ, supra.
[24] IPCAJ, supra.

de la parcela que habían opcionado los Matta-Méndez a HAK.[25]

27. El 15 de noviembre de 2005, ARPE dictó Resolución "denegando desarrollo preliminar" peticionado por la parte demandante debido a que no se justificaba la variación solicitada en la cabida del solar.[26]

28. La demanda del presente caso no fue anotada en el Registro de la Propiedad.[27]

Con esas determinaciones de hechos determinadas como que no están en controversia, el TPI dicta la Sentencia Parcial contra la cual la apelante recurre a este foro en Apelación y plantea el siguiente error:

Erró el Tribunal de Primera Instancia al declarar nulo el contrato de opción a compra suscrito por el Apelante y el Matrimonio Matta-Méndez por entender que la causa era ilícita.

Habiendo las pares comparecido con sus escritos, estamos en posición de resolver, lo que aquí hacemos.

**II.**

**A.**

La moción de sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto los hechos materiales del caso, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. *Alicea Pérez v. Seguros Múltiples*, 2022 TSPR 86 (2022); *León Torres v. Rivera*

---

[25] IPCAJ, supra.
[26] Véase Sentencia Parcial, supra.
[27] Véase Estipulaciones de hechos contenidas en el Tercer Informe de Conferencia con Antelación a Juicio radicado el 21 de noviembre de 2019.

*Lebrón*, 204 DPR 20 (2020); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015). *Oriental Bank & Trust v. Perapi S.E*, 192 DPR 7 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010).

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria está regido por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En esencia, esta Regla dispone que para emitir una adjudicación de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y alguna otra evidencia, surja de que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor de la parte promovente. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e). Véanse, además, *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 430; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).

Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Meléndez González et al. v. M. Cuebas*, supra, págs. 109-110; *Const. José Carro v. Mun. Dorado*, supra, pág. 129; *Nieves Díaz v. González Massas*, supra, pág. 848.

La parte que promueve la moción de sentencia sumaria debe establecer su derecho con claridad y, además, como vimos, debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción. *Mun. de Añasco v. ASES et al.*, 188 DPR

307, 326 (2013); *Nieves Díaz v. González Massas*, supra, pág. 848; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). El Tribunal Supremo ha establecido que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010), citando a J.A. Cuevas Segarra, T*ratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Mun. de Añasco v. ASES et al.*, supra, págs. 326-327. La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, se refiere a estos hechos como "esenciales y pertinentes".

La controversia en cuanto al hecho material tiene que ser real, por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110; *Ramos Pérez v. Univisión*, supra, págs. 213-214. La duda debe ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Íd*.

Por otro lado, la Regla 36 de Procedimiento Civil, *supra*, también regula de manera específica los requisitos de forma que debe cumplir la parte promovente de la moción de sentencia sumaria, así como la parte que se opone a esta. En cuanto al listado de hechos no controvertidos que la parte promovente debe exponer en su solicitud, esta tiene que desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada y otra prueba admisible que lo apoya. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir,

detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Íd*.

Vemos que, según nuestro ordenamiento procesal civil, se les exige tanto al promovente como al opositor de una moción de sentencia sumaria que cumplan con unos requisitos de forma específicos para que pueda considerarse su solicitud. El incumplimiento con estos requisitos tiene repercusiones distintas para cada parte.

De un lado, si el promovente de la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. *Meléndez González et al. v. M. Cuebas*, supra, pág. 111. A *contrario sensu*, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en Derecho. *Íd*. Incluso, si la parte opositora se aparta de las directrices consignadas en esta Regla el tribunal podrá no tomar en consideración su intento de impugnación de los hechos ofrecidos por el promovente. *Íd*.; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

Ahora bien, en cuanto a la evaluación por la vía sumaria, el Tribunal Supremo ha destacado que no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. *Ramos Pérez v. Univisión,* supra, pags. 219.

En resumen, en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, el Tribunal Supremo señaló que el ordenamiento procesal civil de nuestra jurisdicción:

> "coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso, el deber de identificar

cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación." *Íd*., págs. 433-434.

En cuanto al estándar aplicable al Tribunal de Apelaciones al momento de revisar las determinaciones del foro primario de conceder o denegar mociones de sentencia sumaria, se ha establecido que debemos realizar una evaluación *de novo* de la controversia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 116. En ese análisis estamos facultados a: considerar los documentos que se presentaron ante el foro primario; determinar si existe o no alguna controversia genuina de hechos materiales; y revisar si se aplicó el Derecho de forma correcta. *Íd.*, Véase, también, *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

**B.**

En Puerto Rico rige el principio de la libertad de contratación o autonomía de la voluntad, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. Artículo 1207 del Código Civil, 31 LPRA sec. 3372;[28] *Feliciano v. Luxury Hotels Int'l of P.R. Inc.*, 2022 TSPR 133, pág. 22; *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713 (2001); *Trinidad v. Chade*, 153 DPR 280 (2001); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994); *Plaza del Rey, Inc. v. Registrador*,

---

[28] El *"Código Civil de Puerto Rico"*, Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico"* de 2020, 31 LPRA sec. 5311 *et seq*. No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esa es la ley que aplica al caso.

133 DPR 188 (1993); *Casiano, Jr. v. Borintex Mfg. Corp.*, 133 DPR 127 (1993).

A partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA sec. 3375; *Trinidad v. Chade*, supra. De esta manera, cuando un contrato es legal, válido y carente de vicios del consentimiento, el mismo constituye la ley entre las partes y debe cumplirse a tenor de este. Artículo 1044 del Código Civil, 31 LPRA sec. 2994; *Feliciano v. Luxury Hotels Int'l of P.R. Inc.*, supra; *Constructora Bauzá, Inc. v. García López*; 129 DPR 579, 593 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345 (1984). Es por ello, que el Artículo 1054 del Código Civil, 31 LPRA sec. 3018, sujeta a aquellos que de alguna manera contravengan sus obligaciones a la indemnización de los daños y perjuicios causados. Bajo dicho supuesto, todo incumplimiento contractual dará lugar a un resarcimiento. *Álvarez v. Rivera*, supra, pág. 18.

Es normativa reiterada que, los contratos son una fuente de obligación en nuestro ordenamiento jurídico.[29] *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021). Cónsono con ello, el contrato se ha definido como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones."[30] A su vez, se ha reconocido que, "[e]s facultativo contratar o no hacerlo." *Engineering Services v. AEE*, 209 DPR 1012, 1028 (2022); *PRFS v. Promoexport*, 187 DPR 42, 55 (2012). Es decir, si no existe la voluntad de obligarse, o

---

[29] Art. 1063 (b), Código Civil de 2020, 31 LPRA sec. 8984 (b).
[30] Art. 1230, Código Civil de 2020 31 LPRA sec. 9751.

fundamento razonable para concluir que esta existe, no surge un vínculo contractual. *Trinidad v. Chade*, 153 DPR 280, 293 (2001); refrendado en *Engineering Services v. AEE, supra*.

Por su parte, los contratos se perfeccionan "desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva."[31] Véase *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022). Por consiguiente, para que un contrato exista y obligue a las partes debe cumplir con los siguientes elementos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato; y (c) causa de la obligación que se establezca.[32]

Por lo cual, una vez ha sido perfeccionado mediante la concurrencia de estos tres requisitos, "lo acordado en los contratos tiene fuerza de ley entre las partes".[33] Es desde entonces que las partes se obligan, "no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". *Aponte Valentín v. Pfizer Pharms., LLC*, 208 DPR 263, 285 (2021).

Vale destacar que en nuestra jurisdicción rige el principio de autonomía de la voluntad de las partes o la libertad contractual en virtud del cual "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público."[34] *Engineering Services v. AEE*, *supra*, en la pág. 1027; *Feliciano v.*

---

[31] Art. 1237, Código Civil de 2020, 31 LPRA sec. 9771.
[32] *Íd.* Art. 1213, Código Civil de 1930, 31 LPRA sec. 3391 (derogado).
[33] Art. 1233, Código Civil de 2020, 31 LPRA sec. 9754. Véase *Engineering Services v. AEE,* 209 DPR 1012, 1027 (2022); *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021).
[34] Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

*Luxury Hotels Int'l of P.R. Inc.*, 210 DPR 712, 728 (2022). Como corolario de lo anterior, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 610, 627 (1997).

A su vez, la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales. *Marina Ind., Inc. v. Brown Boveri Corp*., 114 DPR 64, 69 (1983). Por lo cual, el Art. 354 del Código Civil de 2020, *supra*, en materia de interpretación del negocio jurídico se han reconocido las siguientes reglas:

   a. se presume que el negocio jurídico se otorga de buena fe; y

   b. si el negocio jurídico es unilateral, se atenderá al sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad de su autor. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo.

   **Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.**

   Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.

   Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico. (Énfasis nuestro). 31 LPRA sec. 6342.

## C.

El contrato de opción de compra no estaba regulado de forma explícita por el Código Civil vigente en Puerto Rico con anterioridad al Código actual, pero el Tribunal Supremo de Puerto Rico si había reconocido su validez. Se trata de un negocio consensual preparatorio, mediante el cual una parte le concede a otra parte, por tiempo fijo y en determinadas condiciones, la

facultad de decidir respecto a la celebración de otro contrato principal. *P.D.C.M. Assoc. v. Najul Báez*, 174 DPR 716, 724 (2008); *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001).

Un aspecto neurálgico de dicho contrato es que la opción tiene que ejercitarse **dentro de un plazo definido**. *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 583 (1989). Si se renuncia dicho derecho de opción o no se ejercita durante el término concedido, queda extinguido el derecho. *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 249 (2002). Es importante destacar que el optatario viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente*. Mayagüez Hilton Corp. v. Betancourt,* supra, pag.250.

Por otro lado, el Tribunal Supremo de Puerto Rico ha aceptado la tesis que predomina en la doctrina española relacionado a esta figura jurídica; y ha adoptado los requisitos esenciales que debe poseer un contrato de opción de compra en dicha doctrina. Estos son: "1ro. Concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta (la prima, en su caso, es elemento accidental). 2. Concesión de modo exclusivo. 3. **Por plazo cierto.** 4. Sin otra condición que el propio juicio del optante." *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796 (1975). Como podemos observar, para que advenga a la vida jurídica un contrato de opción de compra, el mismo debe cumplir con los requisitos mínimos esenciales previamente vertidos y reconocidos por nuestro Tribunal Supremo.

Por otro lado, dichos requisitos mínimos esenciales no son irreconciliables con los principios generales de las obligaciones y

los contratos, que son extendidos a los contratos de opción de compra. *Rosa Valentín v. Vázquez Lozada*, supra; *Pérez v. Sampedro*, 86 DPR 526 (1962). Esto significa que no se soslaya el principio de libertad de contratación y las partes pueden pactar las cláusulas y condiciones que determinen, siempre que no contravengan las leyes, la moral ni el orden público. 31 LPRA sec. 3372. Por consiguiente, el derecho de opción de compra puede estar supeditado al cumplimiento de ciertas condiciones. *Mayagüez Hilton Corp. v. Betancourt*, supra; y "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en el contrato se le imparte" *Zeta Enterprises, Inc., v. E.L.A.*, 145 DPR 1, (1998).

Aunque no aplica el vigente Código Civil a la transacción que nos ocupa, mencionamos el hecho de que este contrato se incorporó a dicho texto de ley al aprobarse el vigente Código Civil.

El Código Civil vigente en Puerto Rico, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*, reconoce el contrato de opción de compra como un contrato válido en nuestro ordenamiento jurídico. El Artículo 1029 del Código Civil de 2020, *supra*, lo define como "el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado."[35]

Por su parte, el Art. 1030 del Código Civil de 2020, *supra*, reglamenta los requisitos del título de constitución de la opción de compra. En específico, establece lo siguiente:

---

[35] 31 LPRA sec. 8821.

El título de constitución, además de las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente, debe contener, como mínimo, los siguientes requisitos:

    a. el plazo de duración del derecho y, si procede, el plazo para su ejercicio;

    b. en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real;

    c. el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y

    d. la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido.

[…]. 31 LPRA sec. 8823.

A su vez, el tratadista Puig Brutau ha expresado que "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 50.

Cónsono con lo anterior, en el contrato de opción es el optante quien ostenta la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. *Matos Lorenzo v. Rivera Tirado*, 181 DPR 835, 841 (2011).

De otra parte, se ha reiterado que "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte". *Zeta Enterprises, Inc. v. ELA*, 145 DPR 1, 10 (1998). Por lo cual, hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones. *Íd*.

Ahora bien, si la opción se ejerce dentro del plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado. *Mayagüez Hilton Corp. v. Betancourt, supra*. Desde entonces, las partes vienen obligadas a satisfacer sus respectivas prestaciones bajo el contrato definitivo. *Matos Lorenzo v. Rivera Tirado, supra*, pág. 842.

De este modo, el contrato de opción tiene una naturaleza transitoria y puede ser aplicable a un sinnúmero de contratos, tales como el de compraventa, sociedad, arrendamiento de cosas y de servicios. *Mayagüez Hilton Corp. v. Betancourt, supra*, en las págs. 246-247.

En ocasiones, el texto del contrato no permite por sí solo una comprensión única de lo acordado, por lo cual se hace necesaria una labor interpretativa por parte de los Tribunales para auscultar la verdadera y común intención de los contratantes. *Merle v. West Bend Co.,* 97 DPR 403 (1969). La intención puede demostrarse por todos los medios. Por lo que el juzgador debe examinar todas las circunstancias concurrentes al otorgamiento del contrato para adjudicar la intención de las partes, incluyendo los actos anteriores, coetáneos o posteriores al otorgamiento del contrato. Artículo 1234 del Código Civil, 31 LPRA sec. 3472; *Marina Industrial, Inc., v. Brown Boveri Corp.,* 114 DPR 64, 69 (1983); *Cooperativa La Sagrada Familia v. Castillo,* 107 DPR 405, 417 (1978); *Hoffman v. Cuadrado,* 14 DPR 590 (1908).

El Código Civil de 1930 disponía que, "[c]ualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Artículo 1235 del Código Civil, 31 LPRA sec. 3473. Cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse

el más adecuado para que produzca efecto. Artículo 1236 del Código Civil, 31 LPRA sec. 3474. Además, las cláusulas de los contratos deberán interpretarse las unas con las otras, atribuyéndole a las dudosas el sentido que resulte del conjunto de todas. Artículo 1237 del Código Civil, 31 LPRA sec. 3475. Sobre esto, el Tribunal Supremo ha expresado que al igual que en el caso de un estatuto, los términos de un contrato deben leerse conjuntamente y armonizarse para determinar la verdadera intención de las partes. *Caballero v. Kogan*, 73 DPR 666, 674 (1952). Finalmente, la interpretación contractual tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. *SLG Irizarry v. SLG García, supra*, pág. 727.

En *Meléndez v. Jiménez Realty*, 98 DPR 892 (1970) se resolvió que una lotificación sujeta a la condición suspensiva de que la misma sea aprobada por la Junta de Planificación, no es contraria a la ley ni a la moral ni al orden público.

Los tribunales tienen la facultad y el deber de velar por el cumplimiento de los contratos. Por lo tanto, no debemos relevar a una parte del cumplimiento de su obligación contractual, cuando el contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 610, 627 (1997).

**D.**

Sabido es que los requisitos esenciales de un contrato son: el consentimiento de los contratantes; objeto cierto que sea materia del contrato; y, la causa de la obligación que se establezca. Art. 1213 del Código Civil, *supra*.

El objeto del contrato se refiere a lo que las partes se deben, que debe ser lícito, posible y determinado o determinable y puede ser tanto una cosa como un servicio. J.R. Vélez Torres, *Curso de*

*Derecho Civil, Derecho de Contratos*, San Juan, Universidad Interamericana de Puerto Rico Facultad de Derecho, T-IV, Vol. II, págs. 67-72.

Por otra parte, la causa del contrato se refiere a la razón por la cual los individuos decidieron contratar. *Íd.* pág. 72. En los contratos onerosos, la causa se ha entendido como la prestación o promesa de servicio de una parte a otra. *Piovanetti García v. Touma y otros*, 178 D.P.R. 745, 773 (2010). Al ser un elemento esencial, todo contrato debe tener causa y la misma debe ser lícita. *Delgado Rodríguez v. Rivera Siverio*, 173 D.P.R. 150 ,160 (2008). La causa de un contrato es ilícita cuando se opone a las leyes o a la moral. Así, todo contrato sin causa o con causa ilícita es nulo. *Piovanetti García v. Touma y otros, supra.*

Existen dos tipos de causas ilícitas, a saber, la ilegal que se opone a las leyes y la torpe que se opone a la moral y a las buenas costumbres. *Col. Internacional Sek v. Escribá*, 135 D.P.R. 647, 665 (1994).

Un contrato que se celebre entre partes que están conscientes de que con el contrato se lesiona un derecho ajeno o intenta cometer un fraude es un contrato con causa ilícita. Una vez identificada la ilicitud de la causa de un contrato, el contrato es nulo e inexistente. *Delgado Rodríguez v. Rivera Siverio*, *supra*; *Col. Internacional Sek v. Escribá*, *supra*, págs. 664-665. Cabe señalar que en casos donde la causa torpe es atribuible a ambos contratantes, estos están impedidos a reclamarse recíprocamente. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 183 (1985). En otras palabras, cuando en un contrato existe una causa torpe imputable a ambas partes, ninguna de estas tiene acceso a los Tribunales para ejercer la acción de nulidad y realizar

las restituciones correspondientes. Cuevas Segarra, *op. cit*. pág. 30.

Finalmente, el consentimiento de las partes es el acuerdo de voluntades que se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa en el contrato. Artículo 1214 del Código Civil, 31 L.P.R.A. sec. 3401; Cuevas Segarra, *op. cit*. pág. 16. El consentimiento debe ser libre y consciente, manifestado por una persona capaz, sobre la cosa y la causa del negocio, sin ningún vicio que lo invalide. *Íd*, pág. 17. La capacidad se presume. Sin embargo, el Artículo 1215 del Código Civil, 31 L.P.R.A. sec. 3402, establece que no podrán prestar consentimiento los menores no emancipados, los locos o dementes y los sordomudos que no sepan leer ni escribir. En otras palabras, para que el consentimiento sea válido es necesario que el mismo sea libre y espontáneo, además de que quien lo de sea capaz y tenga completo conocimiento sobre lo que está haciendo. *L.M. Quality Motors Inc. v. Motorambar Inc.*, 183 D.P.R. 259, 267 (2011).

**E.**

El Código Civil de 1930 que no regulaba expresamente este contrato de opción que aquí nos ocupa, regía los regímenes típicos de ineficacia de los contratos: nulidad, anulabilidad y recisión. Ese tipo de análisis si aplica a los contratos de opción que se rigen por el Código Civil de 1930. La nulidad es la sanción más severa declarando la inexistencia del contrato por ser su nulidad absoluta. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, Vol. II, Ed. Tecnos, Madrid, 1995, a la pág. 110. La anulabilidad, al igual que en los contratos de nulidad absoluta, existe una ineficacia desde que se suscribió el contrato, "que impedía que produjese sus

efectos, [sin embargo] en la anulabilidad la ineficacia es sobrevenida". *Id*., a la pág. 116.

La nulidad absoluta de los contratos implica que el contrato adolece de una imperfección que le impide producir sus efectos propios. Se consideran radicalmente nulos los contratos que hayan sido celebrados en contra de la ley, la moral o el orden público. Igualmente son radicalmente nulos los contratos que adolezcan de alguno de los elementos esenciales para su validez, a saber, consentimiento de las partes, defecto de objeto o ausencia o ilicitud de causa. Un contrato radicalmente nulo no produce efectos jurídicos. Por tanto, no engendra, modifica ni extingue relaciones jurídicas puesto que nunca advino vinculante, ni creó relación alguna entre las partes. Por tal razón la acción de nulidad no tiene término prescriptivo y puede llevarse a cabo por cualquiera de las partes, e incluso un tercero que tenga un interés legítimo envuelto. Ahora bien, precisa hay que señalar que cuando la nulidad del contrato es consecuencia de ser ilícita la causa o el objeto del contrato, si el hecho constituye un delito o falta común a ambos contratantes, éstos carecen de toda acción entre sí y se procederá contra ellos, dándose, además, a las cosas o precio que hubiesen sido materias del contrato, la aplicación advertida en el Código Penal. Vélez Torres, *op. cit*. págs. 121-127.

Declarada la nulidad de un contrato, procederá la restauración del estado primitivo anterior de las cosas, mediante la restitución de las prestaciones objeto del contrato, a menos que la nulidad se deba a causa torpe o ilícita, en cuyo caso el criterio rector es el de la culpa o torpeza atribuible a las partes. Si ambas partes son culpables, están impedidas de reclamarse recíprocamente. Si una sola parte es culpable, la parte inocente puede reclamarle a la otra. Cuevas Segarra, *op. cit*. pág. 51.

Por otro lado, la nulidad relativa o anulabilidad se refiere a contratos válidos en su origen que sufren de un vicio o un defecto susceptible de producir su ineficacia si fuese impugnado. Las causas de anulabilidad son los vicios en el consentimiento (error, dolo, violencia o intimidación), la falta de capacidad para obrar y la causa falsa. La acción de anulación tiene un término de caducidad de cuatro (4) años. Vélez Torres, *op. cit*. pág. 128. El punto de partida de dicho término depende de la causa de anulabilidad. En los casos de intimidación o violencia, comenzará a partir desde el día en que éstas hubiesen cesado. En los casos de error, dolo o falsedad de causa el término comenzará desde la consumación del contrato. Cuando la acción de anulabilidad del contrato se lleva para invalidar un contrato hecho por una persona casada, sin autorización competente, el término comenzará a partir de la disolución del matrimonio. Finalmente, cuando se refiera a un contrato celebrado por un menor o un incapaz, el término comenzará desde que el menor o el incapaz salieren de tutela. Art. 1253 del Código Civil, 31 L.P.R.A: sec. 3512. La declaración de nulidad relativa de un contrato tiene el efecto de impedir que se produzca efectos, a tal extremo de considerarse que, nunca existió. Por tanto, de haberse consumado el contrato, las partes vienen obligadas a devolverse las prestaciones que se habían hecho. Si el contrato aún no se había cumplido, las partes quedan libradas del cumplimiento de este. Vélez Torres, *op. cit*. pág. 127-130.

Hay que recordar que nuestro más alto foro ha establecido que caducidad es "la decadencia de un derecho, o su pérdida, por no haber cumplido la formalidad o condición exigida por ley en un plazo determinado. Esta pérdida del derecho se produce automáticamente por no ejercitarse en el transcurso de dicho

plazo." *Beníquez et. al. v. Vargas*, 184 D.P.R. 210, 232 esc. 78 (2012).

**F.**

La sección 7.00 del Reglamento de Zonificación Especial para las zonas No Urbanas de los Municipios Circundantes al Bosque Nacional del Caribe (en adelante el Reglamento) describe los distritos clasificados A-3 como: "áreas no urbanas ni desarrolladas que están generalmente localizadas en terrenos montañosos y ondulantes, aunque puedan encontrarse en áreas llanas. Estas son áreas cuyo patrón general de desarrollo y su naturaleza agrícola se afectan adversamente con la introducción de usos urbanos en forma dispersa y sin un adecuado control los que a su vez genera demandas excesivas por servicios públicos...".

La sección 7.03 del reglamento establece los usos permitidos para los distritos clasificados como A-3. Estos incluyen (a)siembra de cosechas, forrajes y bosques, (b)cría de ganados y de aves, de animales domésticos y de caza, apiarios y pesquería. Otros usos accesorios incluyen (a)procesamiento y empaque de los productos agropecuarios, cosechados en la finca, (b)venta de productos cosechados en la misma finca, (c)molinos para moler granos cosechados en la finca, (d) talleres de artesanía usando materiales producidos en la finca, (e)casas de una o dos familias y otros usos de acuerdo con lo establecido en la sección 18.04.

La sección 7.05 del reglamento especifica el tamaño de fincas en este distrito: "...toda finca a lotificarse o segregarse con posterioridad a la vigencia de esta reglamentación tendrá un área no menor de veinticinco (25) cuerdas...".

En atención a que la aplicación literal del reglamento puede resultar en la prohibición o restricción irrazonable del disfrute de

una pertenencia o propiedad en casos excepcionales, el propio Reglamento establece una excepción en la subsección 17.01 que le permite a la Junta de Planificación o OGPE autorizar variaciones en los requisitos del Reglamento en tales casos excepcionales. Ninguna variación o concesión de este tipo se considerará como una variación en el Mapa de Zonificación del Reglamento.

La Junta de Planificación o la Autoridad de Reglamentos y Permisos, podrá según esta sección autorizar una variación en casos donde se restrinja irrazonablemente el disfrute de la propiedad y se demuestre a satisfacción de la agencia que "la variación (concesión) aliviará un perjuicio claramente demostrable, o que la misma habrá de redundar en los mejores intereses de la comunidad y el sector".

En Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 93 (1974), el Tribunal Supremo expresó que la variación tiene el propósito de atenuar el rigor del reglamento permitiendo el uso prohibido cuando se demuestra que debido a las circunstancias especiales la aplicación de las restricciones puede resultar irrazonable y ocasionar perjuicios al dueño.

Como regla general se concede una variación para evitar el efecto confiscatorio sobre la propiedad que conllevaría la aplicación rigurosa de un reglamento de zonificación:

> A variance is granted to render justice in unique and individual cases of practical difficulties or unnecessary hardship resulting from a literal application of the zoning ordinance. It is designed to correct maladjustments and inequities in the operation of general regulations. (Escolios omitidos.) 3 Anderson, American Law of Zoning, 3d Sec. 20.02, pág. 366 (3ra ed. 1986).

El Tribunal Supremo señaló en A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 862 (1989) que:

Por la naturaleza del interés público implicado, las variaciones a los requisitos de zonificación no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causaron un daño particular que no comparte con otros. 'Por eso se descartará una variación cuando no haya prueba de que la situación del dueño sea singular y distinta a la de sus colindantes.'  (Traducción suplida) 3 Yokley, Zoning Law and Practice, Sec. 21-6, págs. 297-298 (4ta ed. 1979).  De lo contrario, su uso indiscriminado podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos.

La Junta sólo debe conferir variaciones en circunstancias extraordinarias y para evitar perjuicios a la propiedad ya que debe respetarse la política pública y estrategia de desarrollo ordenado a largo plazo plasmados en el mapa de zonificación.  Conceder variaciones a los requisitos de zonificación de forma laxa, destruye el objetivo de la planificación urbana.  Asoc. Res. Park Side, Inc. v. J.P., Op. de 15 de diciembre de 1998, 98 J.T.S 156.

Con el propósito de definir los límites de su amplio poder sobre estos extremos, la Junta de Planificación de Puerto Rico adoptó un Reglamento de Zonificación (Reglamento de Planificación Núm. 4) que en su Sec. 82.05 establece los siguientes criterios para otorgar variaciones y evitar que la aplicación literal de sus requerimientos resulte en una confiscación de la propiedad:

82.05 -- Variaciones en Uso -- La Junta o la Administración[,] cada cual en su ámbito jurisdiccional, podrá autorizar variaciones en uso cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico. Se tomará en consideración, entre otros, los siguientes:
1. El costo de adaptar la propiedad a los usos permitidos debido a las disposiciones de éste u otros reglamentos y el beneficio que se derivaría una vez adaptada éstas para los usos permitidos.
2. Las razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser

únicas a la misma y no una característica general del distrito o del sector del distrito donde ubica. No podrán haber sido causad[a]s por el dueño.
        3. El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con los propósitos del distrito, con el vecindario o comunidad en que ubica.
        4. La variación solicitada no afecta adversamente, entre otros, los siguientes factores:
        a. La disponibilidad de infraestructura
        b. El contexto en el que ubica
        c. El ambiente de la calle
        d. La seguridad y tranquilidad de los vecinos. (Énfasis suplido.) Reglamento de Zonificación de Puerto Rico, ed. rev., 1989, pág. 262.

En Asoc., C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 332 (1985), el Tribunal Supremos examinó nuevamente la aplicación de la doctrina y se reafirmó en que la misma se concede únicamente en los casos expresamente autorizados por el Reglamento y siempre sujetos a las condiciones en él prescritas.

De hecho, el reglamento requiere que las razones para sostener una variación deben ser únicas a la estructura y no una característica general del distrito donde ubica la misma. Corresponde al peticionario probar que su propiedad está particularmente afectada por una reglamentación que resulte innecesariamente gravosa (unnecessary hardship). Yokley, supra, Sec. 21-6, pág. 296.

El Reglamento de Zonificación acoge este precepto en su Sec. 82.05(2), supra, al requerir que las circunstancias especiales para justificar una variación administrativa '[n]o podrán haber sido causad[a]s por el dueño'. Según esta doctrina, se considera que el daño es auto infligido cuando el solicitante adquiere la propiedad con conocimiento de las restricciones sobre su uso. Se presume que en esos casos el solicitante adquiere la propiedad a un precio que tomó en consideración la restricción y con el propósito de utilizarla para un uso no previsto por la zonificación.

A person who purchases land with knowledge, actual or constructive, of the zoning restrictions which are in effect at the time of [the] purchase, is said to have created for himself whatever hardship such restrictions entail. When he seeks administrative or judicial relief from such self-created hardship, he encounters resistance which varies in intensity with the kind of relief sought and the forum whose jurisdiction he invokes. Anderson, supra, Sec. 20.44, pág. 505.

Esta regla es aplicable a cualquier peticionario independientemente de si su conocimiento de la restricción es real o constructiva. Anderson, supra, Sec. 20.45, pág. 513. Aunque este tipo de propietario no está absolutamente impedido de reclamar sus derechos constitucionales sobre la propiedad, su conocimiento previo sobre las limitaciones impuestas por la zonificación debilita las posibilidades de éxito en los tribunales. Id., Sec. 20.44, pág. 505.

Resumiendo, en su sec. 98.00, el Reglamento de Zonificación, supra, establece la figura de la variación la cual permite al titular de una propiedad solicitar que se le exima de las restricciones de zonificación que sujetan su propiedad. El propósito de la figura es evitar que la aplicación literal de los requisitos de zonificación resulte en una confiscación del disfrute de la propiedad.

La Sec. 98.05 del Reglamento de Zonificación, supra, establece la figura de la variación en uso para la situación en que el propietario de un terreno desea utilizarlo para fines no permitidos en la zona donde ubica. La referida sección establece la facultad de la Junta para eximir de los requisitos de zonificación cuando existen circunstancias excepcionales y siempre que tales circunstancias no hayan sido creadas por el mismo dueño del terreno. La Junta puede conceder variaciones en uso cuando se establezca claramente que ninguno de los usos que están

permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico.

**G.**

Es doctrina firmemente establecida en nuestro ordenamiento jurídico que "los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso." *MGMT. Adm. Servs. Corp. v. E.L.A.*, 152 D.P.R. 599, 606 (2000) citando a *In re: Tormos Blandino*, 135 D.P.R. 573 (1994). Esta doctrina, más que constituir un mandato inflexible, recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal dentro de un caso. *Sociedad Legal de Gananciales v. Pauneto,* 130 D.P.R. 749, 754 (1992). Cuando se adjudican en un pleito derechos y obligaciones mediante un dictamen firme, este constituye la ley del caso. Por tanto, dichos asuntos no se pueden reexaminar, luego del periodo provisto para la reconsideración y para la revisión, a menos que las determinaciones previas sean erróneas o puedan causar una grave injusticia. *In re Fernández Díaz*, 172 D.P.R. 38, 43-44 (2007).

**III.**

En el caso de autos, nos encontramos ante una Sentencia emitida por el TPI en la que declaró *Ha Lugar* una solicitud de sentencia sumaria presentada por la parte Apelada. Por ello, es menester que realicemos una revisión *de novo* de la solicitud de sentencia sumaria que concedió el TPI. Efectuado tal ejercicio, disponemos que el TPI aplicó incorrectamente el derecho al evaluar el contrato de Opción objeto de la controversia que existía y procede dejar sin efecto la sentencia ante nuestra consideración.

HAK nos solicita que revisemos la Sentencia mediante la que el Tribunal de Primera Instancia desestimó su demanda de forma sumaria al indicar que el contrato de opción que aquí nos ocupa, era nulo por falta de causa lícita.

Como antes explicamos, la causa del contrato se refiere a la razón por la cual los individuos decidieron contratar. En este contrato de opción, que es objeto de esta controversia, la causa de este era que, si se cumplía la condición suspensiva dispuesta en el mismo, una de las partes vendería a la otra un predio al precio acordado. No encontramos en dicho contrato, como lo hizo el TPI, que el contrato de opción suscrito entre las partes adoleciera de causa ilícita. Es típico un contrato de opción de compraventa de un predio sujeto a que la agencia que le corresponda aprobar la segregación, la apruebe o rechace la segregación de este de la finca principal. Si se rechaza, se acabó el acuerdo, pero el mismo está válidamente vigente hasta que ocurra el rechazo y si se aprueba, entonces se tiene que perfeccionar la compraventa.

Mientras no ocurre la aprobación de la segregación acordada en el contrato de opción por las autoridades correspondientes, como el contrato que nos ocupa, no nace la obligación de los vendedores de perfeccionar la compraventa, pero ello no permite que esos vendedores puedan disponer de la propiedad como si no existiera el contrato de opción. Ante ello no procedía que se dictara la Sentencia Sumaria que dictó el TPI pues no es correcto que ese contrato de opción no estuviera vigente para el 27 de diciembre de 2004, cuando los Matta-Méndez vendieron la finca principal a FB y dicha venta de la finca principal incluyó el predio de 500 metros cuadrados que se había acordado por los vendedores, sacar del mercado de venta de inmuebles hasta tanto

no se obtuviera un resultado de aprobación o rechazo por las autoridades competentes, de la segregación acordada en el mismo.

No hay controversia de que el 19 de noviembre de 2004, por conducto de la entonces representación legal de los Matta-Méndez, la Lcda. Kiomarys Torres Cruz, HAK fue notificado de una solicitud de desalojo del predio que ocupaba y que pretendía adquirir bajo el contrato de opción a compra. En la carta, con fecha de 18 de noviembre de 2004, se alegó como razón para la solicitud de desalojo que HAK había expresado a los Matta-Méndez que no tenía interés en adquirir el mencionado predio.

Tampoco hay controversia de que el 12 de enero de 2005, desconociendo de la venta de la finca principal, HAK le envió una carta a la Lcda. Kiomarys Torres, abogada de los Matta-Méndez, negando haber decidido no ejercer la opción de compra. Esos actos, alrededor de la compraventa que pretendió ignorar un contrato de opción válido, crearon múltiples controversias que solo se pueden atender en un juicio plenario. La sentencia sumaria procede ser dejada sin efecto, pues parte de la premisa equivocada que el contrato de opción era nulo e inexistente, lo que no es correcto en derecho.

Reiteramos que en *Meléndez v. Jiménez Realty*, 98 DPR 892 (1970) se resolvió que una lotificación sujeta a la condición suspensiva de que la misma sea aprobada por la Junta de Planificación, no es contraria a la ley ni a la moral ni al orden público.

Analizada la totalidad del expediente de autos, al amparo del marco jurídico previamente expuesto, concluimos que erró el TPI al desestimar la causa de acción instada por los apelantes mediante la Sentencia Sumaria que aquí revisamos. Por lo antes

explicado se decreta revocar dicha sentencia sumaria y que se continúen los procedimientos ante el TPI, incluyendo el reclamo de los aquí apelantes.

**IV.**

En virtud de los fundamentos antes expresados, se revoca la *Sentencia Sumaria* apelada.  Por consiguiente, se devuelve el caso al foro primario para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones